UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                               )
        v.                 )      Crim. No.  12-10338-FDS
                               )
DAVID E. GORSKI,          )
                               )
        Defendant.     )

## GOVERNMENT'S MOTION FOR PRETRIAL RULING ON THE ADMISSION OF TESTIMONY PHILIP LANDER AND PAUL RUNIONS

The United States of America hereby submits this motion in support of a request for a pretrial ruling, pursuant to Federal Rule of Evidence ("FRE") 104(a), on the admissibility of the testimony at trial of two service disabled veteran owners of construction companies.[1]  For reasons set forth herein, their testimony is relevant to specific overt acts described in the indictment and helpful to a clear understanding of the evidence that will be admitted at trial.

## RELEVANT FACTUAL BACKGROUND

Defendant Gorski is charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and an additional four counts of wire fraud in violation of 18 U.S.C. § 1343, for conduct occurring between late 2005 and November 2010. The Indictment alleges, among other things, the following: Gorski, d/b/a Legion Construction, Inc. ("Legion"), recruited "Veteran A" to act as the nominal 55% owner, founder, and President of Legion from January

---

[1] The government also requests that the court take judicial notice of pertinent sections of the Code of Federal Regulations ("CFR").  "Federal regulations, [in contrast to state administrative regulations], must be judicially noticed under the Federal Register Act. *See* 44 U.S.C. § 1507."  *Getty Petroleum Marketing, Inc. v. Capital Terminal Co*., 391 F.3d 312, 325 n.19 (1st Cir. 2004) (Lipez, J., concurring); *see also  Wei v. Robinson*, 246 F.2d 739, 743 (7th Cir.1957) (contents of the Federal Register and of the Code of Federal Regulations are prima facie evidence of the original text and are required to be judicially noticed).  At this time, the government anticipates admitting into evidence at trial the pertinent sections of the CFR through an agent or contracting officer assigned to one of the federal agencies involved in the awarding of the contracts assuming, of course, the court judicially notices the regulations.

2006 to August 2007.  Gorski, a non-veteran, did so for the sole purpose of being able to represent Legion as a Service Disabled Veteran Owned Small Business ("SDVOSB") in order to obtain government contracts specifically set-aside for SDVOSBs.

The Indictment alleges that Gorski and his coconspirators  unjustly enriched themselves by fraudulently representing Legion as a SDVOSB in order to qualify for and obtain contracts specifically set aside for SDVOSBs from the Department of Veteran Affairs (the "VA"), the General Services Administration ("GSA"), the Navy, and the Army.  The Indictment further alleges a number of specific overt acts, including construction contract awards secured by Legion through its misrepresentation of its status as a SDVOSB at the following locations: (1) the Naval Station at Newport, RI (Indictment ¶ 28); (2) a GSA-managed federal building in Burlington, VT (Indictment ¶ 29); and the Togus VA medical center in Chelsea, ME (¶ Indictment ¶ 33).

Philip Lander ("Lander") is a disabled Vietnam-era veteran of the U.S. Army who owns The Lander Group, a SDVOSB. The Lander Group lost its bids to Legion for construction projects at a GSA facility in Vermont, and a "Chiller Plant Upgrade" at the Togus VA medical center in Maine.   On February 12, 2014, Lander was interviewed by investigators.  A copy of the interview report is attached hereto and incorporated herein by reference as Attachment A. Lander informed investigators that he first met Gorski in 2006 or 2007 at a pre-bid meeting in Portsmouth, NH.  Lander asked Gorski about his military service.  Gorski responded that he was not a veteran, but the company was owned by Joseph Steen from Boston who was the head of the American Legion there.  Lander did not think much of it at the time, but later became curious because he and other veteran owners did not see Steen at any of the pre-bid meetings.  Lander noted that Gorski was the only non-veteran at these pre-bid meetings.  He and other veteran owners questioned Gorski about the veteran owner of Legion, and Gorski would just smirk and say that a veteran from Boston owned the company.  Lander stated that he had observed Ianuzzi at a job site and at one pre-bid meeting in 2010.  Lander stated he knew Ianuzzi had been brought in to replace Steen at Legion.  Lander noted that the first time he spoke to Ianuzzi was at a pre-bid meeting for a project in Bourne, MA, in or around April 2011.  Ianuzzi approached Lander

and asked him if he was the person who had reported Legion to investigators.  Lander denied

doing so, but cautioned Ianuzzi that it was the impression of the veteran community at that time

that the company was being run by Gorski.

Lander also told investigators that he was familiar with the SDVOSB regulations.  He

understood the regulations to require that the veteran own 51% or more of the company, and

further that veteran control of the day-to-day operations of the company, including the hiring and

firing of employees.  Lander also noted that he understood the regulations to require that the

veteran owner receive the highest compensation from the business concern.

Paul Runions ("Runions") is a disabled U.S. Army veteran who owns KMK

Construction, Inc., a SDVOSB.  KMK lost its bid to Legion for a construction project at the

Newport Naval Station in Rhode Island in 2006.  On February 25, 2014, Runions was

interviewed by Special Agent Vincent DeSalvo.  A copy of the interview report is attached

hereto and incorporated herein by reference as Attachment B.  Runions informed Agent DeSalvo

that he first met Gorski about six or seven years ago at a pre-award meeting at the Togus VA

facility in Maine.  He saw Gorski from time-to-time thereafter.  Runions stated that Gorski told

him and other disabled veterans that he was the owner of Legion.  Runions assumed that Gorski

was a veteran, but he could not recall Gorski ever discussing his military service.  Runions never

met Peter Ianuzzi nor had he heard of Ianuzzi until after learning that Gorski had been indicted.

Runions explained that KMK lost its certification as a SDVOSB for about nine or ten

months after the Center for Veterans Enterprises ("CVE") transitioned to an electronic-based

renewal process, but KMK never received notification of this development.   Runions stated that

it was his understanding that the federal regulations required SDVOs to own more than 50% of

the company and manage the business on a daily basis, that is, "the veteran has to own and

operate the business."  Runions stated that the role of the veteran has always been clear to him

from reading the regulations.  He also noted that he was already familiar with percentage of

ownership and management requirements based upon his participation in the 8(a) Program

(another government contract set-aside program for certain disadvantaged businesses).

**ARGUMENT**

The anticipated testimony of Lander and Runions is clearly admissible. First and foremost, it is relevant. FRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence" more or less probable. *See* FRE 401. As the First Circuit recently noted, this definition is "quite expansive" and any relevance-based objection "is usually a tough sell." *Bielunas v. F/V Misty Dawn*, Inc., 621 F.3d 72, 76 (1st Cir. 2010). "To be relevant, the evidence need not definitively resolve a key issue in the case, *see, e.g.*, *United States v. Rivera Calderón*, 578 F.3d 78, 96–97 (1st Cir.2009), *cert. denied*, 558 U.S. 1132, 130 S.Ct. 1107, 175 L.Ed.2d 919 (2010)— it need only move the inquiry forward to some degree, *see* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.04[2][b] (Joseph M. McLaughlin ed., 2d ed. 2010). Because this is a quintessential judgment call, *see Morales Feliciano v. Rullán*, 378 F.3d 42, 57 (1st Cir.2004), we give trial judges considerable leeway in deciding whether the contested evidence satisfies this not-too-difficult-to-meet standard, reversing only on a showing of abuse of discretion, see, e.g., *United States v. Sepulveda*, 15 F.3d 1161, 1194 (1st Cir.1993)." *Bielunas, supra*, at 76.

The defendant in this case is charged with conspiring to defraud the United States by misrepresenting Legion as a SDVOSB in order to secure government set-aside construction contracts. Owners of SDVOSBs which bid on projects specifically identified in the indictment, but lost, describe the defendant's actions and statements during the precise time frame of the charged conspiracy. Gorski's statements to these owners are non-hearsay and admissible as party-opponent admissions. *See* FRE 801(d)(2).

4

Moreover, there is no plausible reason for excluding Lander's and Runion's testimony about their understanding of the federal SDVOSB regulations. Both lay witnesses possess sufficient first-hand, particularized knowledge of the regulations from having to ensure their companies were in compliance on a day-to-day basis. *See, e.g.*, *United States v. Munoz-Franco*, 487 F.3d 2573 (1st Cir. 2007) (in bank fraud prosecution, bank officers did not testify beyond the scope of their personal knowledge where they expressed lay opinions based on their knowledge of bank's business operations and banking practices that they acquired during their employment there). As service disabled veterans who had to comply with the federal regulations, Lander's and Runions's testimony will aid the jury in understanding the portions of the CFR that are already admitted into evidence. Their anticipated testimony certainly is not based on scientific, technical, or other specialized knowledge that would qualify them as "experts" in reuglatory law under FRE 702.[2]

Finally, the probative evidence of the anticipated testimony of Lander and Runions is not substantially outweighed by the risk of unfair prejudice. "Under Rule 403's weighing test, it is only unfair prejudice which must be avoided." *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000) (internal quotation and citation omitted); *see also* Advisory Committee's Notes to

---

[2] FRE 701 states that a lay witness may offer opinions that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Courts have allowed lay witnesses to express opinions under FRE 701 "based on the witness's own perceptions and 'knowledge and participation in the day-to-day affairs of [the] business.'" *United States v. Polishan,* 336 F.3d 234, 242 (3rd Cir. 2003) (alternation in original) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3rd Cir.1993)). "Rule 701 ... is meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job." <u>*United States v. Maher,*</u> 454 F.3d 13, 24 (1st Cir.), *cert. denied,* 549 U.S. 1025, 127 S.Ct. 568, 166 L.Ed.2d 420 (2006); *see also United States v. Santiago*, 560 F.3d 62, 66-67 (1st Cir. 2009) (federal agent properly testified as lay witness to use of coded language in drug trafficking based upon his experience).

Fed. R. Evid. 403 ("unfair prejudice" "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").  "The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded, [or] there would be precious little left in the way of probative evidence in any case." *United States v. Carty*, 993 F.2d  1005, 1011 (1st Cir. 1993) (quoting *Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987)).

Gorski's interactions with Lander and Runions, in many respects, cut right to the heart of the matter here.  On the one hand, Gorski told Lander that Steen was the veteran owner of Legion (smirking aside); on the other hand, Gorski told Runions that he (Gorski) owned Legion. Lander never saw Steen at any pre-bid meetings; Runions just assumed that Gorski was a service disabled veteran. Both men came to understand the federal regulations from owning and operating their service disabled veteran owned businesses.  Nothing related to their testimony about their understanding of those regulations is remotely confusing or misleading.

## CONCLUSION

Lander's and Runions's anticipated testimony is relevant to and probative of the charges against Gorski.  Nothing they have to say is unfairly prejudicial to the defendant.  For all of the foregoing reasons, the government respectfully requests a pretrial ruling from the Court pursuant to FRE 104(a) admitting the anticipated testimony of Philip Lander and Paul Runions.  As an offshoot to this ruling, the government requests that the court take judicial notice of the pertinent

6

federal regulations so that they may be admitted in evidence at trial.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:    */s/William F. Bloomer*
WILLIAM F. BLOOMER
Assistant U.S. Attorney
(617) 748-3100

Date: August 8, 2014

### CERTIFICATE OF SERVICE

I, William F. Bloomer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/William F. Bloomer*
WILLIAM F. BLOOMER

7