**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **UNITED STATES of AMERICA** )<br>)<br>v.   )<br>)<br>**DAVID E. GORSKI,**   )<br>)<br>**Defendant.**   )<br>) | **Criminal No.**<br>**12-10338-FDS** |

### MEMORANDUM AND ORDER ON MOTIONS FOR RECONSIDERATION AND DE NOVO REVIEW OF APPLICATION OF CRIME-FRAUD EXCEPTION TO ATTORNEY-CLIENT PRIVILEGE AND DIRECTING COMPLIANCE WITH SUBPOENAS

**SAYLOR, J**.

This dispute involves the application of the crime-fraud exception to the attorney-client privilege. Defendant David Gorski has been charged with mail fraud and conspiracy to defraud the United States. The indictment alleges in substance that from approximately late 2005 until November 2010, Gorski defrauded the United States by fraudulently representing that his company, Legion Construction, Inc. was a Service-Disabled Veteran Owned Small Business Entity ("SDVOSB") in order to qualify for and obtain government contracts. According to the indictment, Gorski is not a service-disabled veteran, and he concealed his "true ownership and control of Legion from the [government] by making false statements, representations, and omissions regarding the ownership, operation, and control of Legion."

### I.     Background

The present dispute centers on a corporate restructuring of Legion that occurred in March 2010. The indictment essentially alleges that the restructuring was undertaken so that Legion

would appear to be in compliance with new regulations while allowing Gorski to maintain effective ownership and control of the company.

The government alleges that Gorski used the services of the Boston-based law firm Mintz Levin Cohn Ferris Glovsky & Popeo, P.C. in connection with the 2010 restructuring to create fraudulently backdated documents to help perpetuate the scheme. Those documents purport to show that Legion underwent the corporate restructuring on February 1, 2010, in advance of a significant regulatory change that occurred on February 8. According to the government, the restructuring did not actually occur until March 2010, and the backdated documents and affidavit were submitted in April 2010 in response to a bid protest lodged by another company.

The government has issued subpoenas under Fed. R. Crim. P. 17(c) to Legion and Mintz Levin that command the production of various documents. Mintz Levin and Legion withheld production of certain documents on the ground that they constituted privileged attorney-client communications.

On August 7, 2014, the Court granted the government's motion for an *in camera* examination under *United States v. Zolin*, 494 U.S. 554 (1989), to determine whether the crime-fraud exception to the attorney-client privilege applied. On August 11, Mintz Levin submitted 2,721 pages of documents for review, as well as a disc containing copies of three voicemail messages. Legion also submitted a large amount of unnumbered documents for review. The Court reviewed the relevant documents *in camera* and held an *ex parte* hearing on September 4, 2014. Also on September 4, the Court issued an order finding that the crime-fraud exception to the attorney-client privilege applied, and the Court ordered Legion and Mintz Levin to produce the documents covered by this order, and responsive to the Rule 17(c) subpoenas

issued by the government, on or before Monday, September 8, 2014, at 5:00 p.m.

On September 8, 2014, defendant filed a motion for the Court to reconsider its September 4 order as overbroad. Specifically, defendant contended that the Court's order was too broad with respect to seven categories of documents. Also on September 8, Legion filed a motion to intervene and stay this Court's September 4 order. Along with the motion to intervene, Legion filed a motion for a *de novo* hearing on the crime-fraud exception issue. During a status conference on September 8, the Court stayed the September 4 order and granted the motion for a *de novo* hearing. On September 10, 2014, the government submitted a memorandum regarding the application of the crime-fraud exception requesting the Court to reinstate its September 4 order and order Mintz Levin and Legion to produce the entirety of documents responsive to the Rule 17(c) subpoenas. The Court held an *ex parte* hearing with Legion and defendant Gorski on September 11, 2014, where attorneys for both parties argued for the Court to reverse the September 4 order or, in the alternative, to narrow its reach.

**II.     Analysis**

The crime-fraud exception to the attorney-client privilege "excludes communications from client to attorney made (1) when the client was engaged in (or was planning) criminal or fraudulent activity, and (2) with the intent to facilitate or conceal the criminal or fraudulent activity." *United States v. Albertelli*, 687 F.3d 439, 450 (1st Cir. 2012). To pierce the attorney-client privilege under the crime-fraud exception, a party must make a *prima facie* showing that the exception applies. *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005). That showing is made if "there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud." *Id.* at 23. The party seeking to defeat the

privilege must show "on something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud." *Id.* The inquiry focuses on the intent of the client, not of the attorney, and "requires the client's *use or aim to use the lawyer to foster the crime or the fraud.*" *Id.* (emphasis in original).

Here, the client at issue is defendant David Gorski and/or Legion Construction, Inc., a closely-held corporation in which Gorski was an officer and stockholder, and which (according to the indictment) he effectively controlled. (For present purposes, it does not appear that there is any need to distinguish between the individual and the corporation.) The relevant lawyers are various attorneys at the law firm of Mintz Levin, as well as Elizabeth Schwartz of the firm Milofsky Schwartz in Worcester. The communications at issue consist of approximately 3000 to 4000 pages of documents produced in camera by Mintz Levin and Legion in response to the Rule 17(c) subpoenas and the Court's subsequent order; they consist principally of printouts of e-mails and drafts of various corporate documents. The communications are both relevant and facially privileged; the only issue is whether the crime-fraud exception applies.

As noted, the basic issue to be decided is whether Gorski, either individually or as an officer, director, and stockholder of Legion, used or intended to use the services of the lawyers in order to foster or further a crime or fraud. That inquiry is made somewhat easier by the fact that a grand jury has indicted Gorski, and thus found probable cause to believe that he committed a crime or fraud against the United States. Thus, this is not like a privilege dispute arising in the course of a grand jury investigation or a civil lawsuit, where a court normally has to ascertain whether any criminal activity occurred at all, and if so to ascertain its nature and scope. Instead, the Court will accept the indictment as conclusive evidence that there is probable cause to

believe that David Gorski participated in the charged crime or fraud during the relevant time period.  *See Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014) ("The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.").

According to the indictment, Gorski actually owned and controlled Legion.  However, he concealed his "true ownership and control of Legion from the [government] by making false statements, representations, and omissions regarding [its] ownership, operation, and control." (Indictment, ¶ 22).  He did so because he was not a service-disabled veteran, and thus Legion did not qualify as an SDVOSB.  Gorski wanted to make it appear that Legion was an SDVOSB "in order to qualify for and obtain government contracts from the VA, the GSA, the Army, and the Navy set aside SDVOSB's."  (*Id.* ¶ 21).  The indictment alleges that the conspiracy to defraud began in late 2005, when Gorski approached a disabled veteran about setting up a business.  (*Id.* ¶ 24).

After setting up Legion in January 2006, it was awarded various government contracts based on false representations that it was an SDVOSB.  (*Id.* ¶¶ 27–29).  Gorski caused the company to undergo a corporate restructuring in August 2007, in which he became a 49% owner and two veterans became owners of the remainder.  (*Id.* ¶ 35).  Gorski, however, caused the veterans to execute demand notes and employment agreements that effectively kept ownership and control with Gorski.  (*Id.* ¶¶ 36–40).  Gorski also placed his wife on Legion's payroll "to enable [him] to draw additional salary and conceal the fact that [he] was paying himself more than the supposed disabled veteran owner / operators."  (*Id.* ¶ 34).  Legion continued to be awarded various government contracts based on false representations that it was an SDVOSB.

(*Id.* ¶¶ 42-44).

Legion underwent a second corporate restructuring on March 23, 2010, which is the basis of the present dispute. The purpose of the restructuring was nominally to buy out one of the veterans, with the remaining veteran assuming a 51% ownership interest. However, Gorski retained effective ownership and control of the enterprise. (*Id.* ¶¶ 46-52). The restructuring occurred after a bid protest was filed by a competitor on March 8, which alleged that Legion was not actually an SDVOSB. (*Id.* ¶ 46). Gorski caused backdated documents to be presented on April 5 to the SBA in response to the protest, which purported to show that the restructuring had occurred on February 1, 2010. (*Id.* ¶ 52). The date of February 1 was chosen, according to the government, because the relevant federal regulation had changed effective February 8, and Gorski wanted it to appear as if Legion was in compliance with the new regulations. The remaining veteran owner, Peter Ianuzzi, also submitted a false affidavit to the SBA essentially stating that the restructuring had occurred on February 1. The indictment alleges that the conspiracy, and the scheme to defraud the United States, continued until November 2010. (*Id.* ¶¶ 20, 54).

Gorski sought the assistance of Mintz Levin, and to some extent Elizabeth Schwartz, in carrying out the March 2010 restructuring. Without revealing the contents of the disputed communications themselves, it is sufficient to note that Gorski began working with Mintz Levin toward the end of 2009, and that Mintz Levin prepared a variety of corporate documents in connection with the restructuring. Mintz Levin created restructuring documents that were dated "as of" February 1, 2010, which formed the basis in part for the false statements to the SBA. It also appears that Mintz Levin had at least some role in the creation and/or submission of the

Ianuzzi affidavit.

Under the circumstances, there is a reasonable basis to believe that Gorski intended to, and did, use the services of the lawyers in order to foster or further a crime or fraud. It is a reasonable inference that Gorski wanted to perpetuate his ongoing scheme when he approached Mintz Levin, and that his intention was to restructure the company while retaining effective ownership and control of Legion and maintaining the appearance that Legion was an SDVOSB. He intended that Mintz Levin lawyers would help him try to achieve that end, and indeed Mintz Levin created the very documents that Gorski used to try to defraud the SBA in April 2010.

Counsel for Gorski and Legion argue strenuously that the record shows that Gorski used Mintz Levin for benign purposes: in particular, that he wanted to be in compliance with the relevant regulations, and that he sought sophisticated advice from a large law firm in order to achieve that goal. They contend that there is no evidence that Gorski lied to the lawyers, or withheld critical information from them, and that at worst he received less-than-perfect legal advice as to how to bring Legion into compliance and respond to the bid protest. They further contend that the backdated documents were dated "as of" the earlier date, which they say is common practice among corporate lawyers, and that therefore there was no intent to deceive the SBA. As for the Ianuzzi affidavit, they contend simply that it was poorly worded.

Even assuming that Gorski was completely forthcoming with the lawyers—a point that is by no means clear—there is nonetheless a reasonable basis to conclude that his intention at all times was to continue the scheme, not simply to fix a past problem and bring his company into compliance. The disputed documents taken as a whole, show that Gorski's intent was to maintain effective ownership and control of Legion, while maintaining its apparent status as a

SDVOSB.  The mere fact that Gorski was seeking help in that respect, and asking his lawyers questions, is not, of course, enough to establish that the crime-fraud exception applies.  And there is certainly an argument to be made that the lawyers were simply attempting to construct a framework that would permit Legion to qualify as a technical matter—in other words, to fall literally within the wording of the regulations—even if the spirit and purpose of the regulation may have been violated.  But there is more than that here.  There is a reasonable basis to believe that the purpose of the restructuring was to try to maintain Gorski's control over Legion without drawing any suspicion from the SBA.  At a minimum, there is a reasonable basis to believe that Gorski submitted backdated documents and a false affidavit to the SBA, that those documents had been created by his lawyers, and that the restructuring documents had been created precisely in order to create the impression that Gorski was not the true owner or operator of the company.  It is therefore reasonable to conclude that Gorski's intent was to use the lawyer's services to perpetuate the scheme.

It should be emphasized that the standard is not proof beyond a reasonable doubt, or proof by a preponderance of the evidence.  As noted, it is a lesser standard:  a showing that "there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud," which is a showing of "something less than a mathematical (more likely than not) probability."  *In re Grand Jury Proceedings*, 417 F.3d at 23.  Some of the inferences that Gorski seeks to have the Court draw are not entirely unreasonable, and may well carry the day at trial.  Among other things, it may be entirely appropriate for Gorski to try to convince the jury that the very fact that he hired a sophisticated law firm to assist him is itself proof that he could not have had any criminal intent in connection with the restructuring.  But the fact that other

inferences might be reasonably drawn from the facts is not enough, under the circumstances, to negate the "reasonable basis" finding.

It should also be emphasized that the issue is not the conduct or intent of the lawyers involved, but that of the client. The Court expressly refrains from making any kind of finding as to the lawyers themselves.

The motion to reconsider seeks in part to limit the application of the crime-fraud exception solely to those communications related to the creation of the backdated documents and the affidavit, excluding any documents created before February 8, 2010 (when the new regulation went into effect) or after April 23, 2010 (after the documents had been submitted to the SBA). The Court declines to do so for at least two reasons. First, under principles of subject-matter waiver, the waiver of privilege applies as to the entire subject matter, not a narrowly defined subset of documents. *See, e.g.*, *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) (explaining that waiver of attorney-client privilege in an attorney-client communication extends "to all other communications relating to the same subject matter"). Second, there is a reasonable basis to believe that Gorski's intention was the same throughout the process of working with the law firm, and that the submission of the backdated documents and affidavit were simply the culmination of his efforts in that respect. The Court will accordingly deny the motion to reconsider as to categories four and seven.

The motion to reconsider also seeks in part to protect communications between Gorski and Elizabeth Schwartz, who apparently served as his personal attorney, during the same approximate time frame as his communications with Mintz Levin. The basic intent of those communications is arguably the same as his communications with Mintz Levin, but Ms.

Schwartz apparently had no role in the submission to the SBA, and therefore under the circumstances the Court will not make the necessary finding. The Court will accordingly grant the motion to reconsider as to category three.[1]

In summary, after *in camera* review, and for the reasons stated on the record in open court at the September 4 and September 11 hearings, the Court finds that the crime-fraud exception applies to the contested documents. It will, however, grant the motion to reconsider its September 4 order to exclude certain documents on the ground that the earlier order was inadvertently overbroad. Specifically, the Court finds that the crime-fraud exception does not apply to documents identified in categories one, two, three, five, and six of defendant's motion for reconsideration. As to the remaining documents, the Court finds that there is a reasonable basis to believe that defendant Gorski, whether individually or as an officer, director, and stockholder of Legion, used the services of Mintz Levin in order to foster or further a crime or fraud against the United States and its agencies. Among other things, the relevant documents appear to show that there is a reasonable basis to believe that Gorski used the law firm to create backdated documents and a false affidavit in order to submit them to the Small Business Administration and make it appear that Legion qualified as a SDVOSB within the meaning of new federal regulations that went into effect on February 8, 2010. Therefore, the crime-fraud exception applies, and the documents are not protected by the attorney-client privilege. The Court is making no finding as to Gorski's guilt beyond a reasonable doubt, or any other finding other than the applicability of the exception.

---

[1] During the September 11 hearing, the Court indicated that it would grant the motion to reconsider as to categories one, two, five, and six.

## III.     Conclusion

For the foregoing reasons, the motions of defendant David Gorski and Legion Construction, Inc. for reconsideration and *de novo* review are GRANTED in part and DENIED in part.  Legion Construction, Inc., and Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., are hereby ORDERED to produce the documents covered by this order, and responsive to the Rule 17(c) subpoenas issued by the government, on or before Monday, September 15, 2014, at 5:00 p.m.  Those entities are not, however, required to submit documents identified in categories one, two, three, five, and six of defendant Gorski's motion to reconsider, filed September 8, 2014.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  September 12, 2014