UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____  )
                                )
UNITED STATES OF AMERICA        )
                                )
v.                              )        No. 12-10338-FDS
                                )
DAVID E. GORSKI                 )
_____  )

**MOTION OF INTERVENOR LEGION CONSTRUCTION, INC. TO STAY THIS COURT'S ORDER OF SEPTEMBER 12, 2014, PENDING APPEAL**

Now comes the intervenor Legion Construction, Inc. ("Legion") and respectfully requests that this Honorable Court stay its Order dated September 12, 2014, requiring Legion and Mintz Levin Cohn Ferris Glovsky & Popeo, P.C. ("Mintz") to produce the documents covered by the Order by 5:00 pm on September 15, 2014.

As reason therefor, Legion states:

1. As demonstrated in the incorporated Memorandum of Law, Legion amply meets the standard for staying a court order pending appeal of that order.

2. The Order as to Mintz should be stayed to permit Legion to appeal the Court's order that Mintz produce the documents covered by the Order, which Legion is entitled to do under the doctrine of *Perlman v. United States*, 247 U.S. 7 (1918).

3. The Order as to Legion should be stayed and held in abeyance pending resolution by the First Circuit of Legion's appeal as to the Mintz order. The overlap between the documents encompassed by the order as to Mintz and the order as to Legion is sufficiently substantial that the First Circuit's decision of the legal issues relating to the Mintz documents will be controlling as to any appeal by Legion as to the documents it has been ordered to produce. *See Redondo Const. Corp.*

*v. Izquierdo*, 746 F.3d 21, 26-27 (1st Cir. 2014)("The law of the case doctrine establishes that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (internal quotation marks omitted)). Staying the portion of the order directed to Legion and holding it in abeyance until the First Circuit resolves Legion's appeal as to the Mintz documents will avoid the need for this Court to expend judicial time and resources holding a contempt hearing upon Legion's non-compliance with the Court's order.

As further reason therefor, Legion refers the Court to the Memorandum of Law incorporated herein.

The government does not assent to the granting of this motion.

## MEMORANDUM OF LAW

## I.   LEGION HAS THE RIGHT TO APPEAL THIS COURT'S ORDER TO MINTZ UNDER THE *PERLMAN* DOCTRINE.

Under *Perlman*, an exception to the final order doctrine, under which a party cannot take an appeal from a court order until the entry of final judgment, exists when an intervenor, a non-party to the underlying action, claims a privilege as to documents ordered to be produced by a third party.

> Under what has been termed the *Perlman* rule, a discovery order addressed to a non-party sometimes may be treated as an immediately appealable final order vis-à-vis a party who claims to hold an applicable privilege. . . . Courts frequently have invoked *Perlman* when a client . . . seeks to appeal an order compelling her attorney (who is neither a party nor a target) to produce allegedly privileged materials.

*FDIC v. Ogden Corp.,* 202 F.3d 454, 459 (1st Cir.2000)). Where the documents are, as here, in the hands of a third party, here Mintz, which "presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance," *Gill v. Gulfstream Park Racing Ass'n, Inc*., 399 F.3d 391, 397 (1st Cir. 2005), *quoting Church of Scientology v. United States,* 506 U.S. 9, 18 n. 11 (1992), the privilege holder has no other means of protecting his interests other than an immediate appeal from

2

the production order. This appeal fits the classic *Perlman* mold: intervenor is a non-party, with no right of appeal from the final judgment, the documents are in the hands of a third party, Legion has no control over the Mintz documents, which, absent a stay, Mintz intends to produce, and is thus "powerless to avert the mischief of the order," *Perlman*, 247 U.S. at 13, and has no way to seek to protect the inviolability of its attorney-client privilege absent an immediate appeal. *See, e.g., In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001)("An exception to the requirement of finality exists when 'a substantial privilege claim . . . cannot effectively be tested by the privilege-holder through a contemptuous refusal [to produce the documents],'" *quoting Ogden Corp.,* 202 F.3d at 459-60).[1]

The Eleventh Circuit recently applied *Perlman* to permit an immediate appeal under circumstances similar to those present in this case. In *Doe No.1 v. United States*, 749 F.3d 999 (11th Cir. 2014), intervenors sought an immediate appeal of an order requiring the government to turn over to plaintiffs documents as to which intervenors claimed a privilege. The Court held that it had jurisdiction to hear the appeal under *Perlman* because "[a]bsent an interlocutory appeal, the

---

[1] In both *Gill* and *Ogden Corp.*, the Court perceived a certain "tension" between the *Perlman* rule and the *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546-47 (1949), collateral order doctrine  but has not returned to the issue in the intervening nine years since its decision in *Gill*. The Court did note in *Ogden Corp*, however, that "recent developments favor" application of the *Perlman* doctrine in these circumstances. *See Ogden Corp.*, 202 F.3d at 460 n.4. Under the collateral order doctrine, an order is immediately appealable if it "(1) concern[s] a collateral issue so conceptually distinct from other issues being litigated in the underlying action that an immediate appeal would neither disrupt the main action, nor threaten to deprive the appellate court of useful context which might be derived from subsequent developments in the litigation; (2) completely and conclusively resolve[s] the collateral issue; (3) infringe[s] rights which appellant could not effectively vindicate in an appeal after final judgment in the case; and (4) involve[s] an important or unsettled legal issue, rather than merely challenge[s] discretionary trial court rulings." *Gill*, 399 F.3d at 398, *quoting United States v. Quintana-Aguayo*, 235 F.3d 682, 684 (1st Cir.2000). This case would satisfy either standard.

intervenors would be left with no recourse to appeal the disclosure order. The intervenors cannot defy the disclosure order and risk a contempt citation because the order is directed at the United States, which has expressed an intent to comply with the order." *Id.* at 1006. Non-party intervenors have no other recourse to vindicate their claim of privilege and are "powerless to avert the mischief of [a discovery] order," *Perlman,* 247 U.S. at 12-13 . . . , because the materials in question are held by a disinterested party who is likely 'to forgo suffering a contempt citation and appealing in favor of disclosure,' *United States v. Krane,* 625 F.3d 568, 573 (9th Cir.2010)." *Doe*, 749 F.3d 1007. The same is true here: the materials are in the possession of Mintz, Legion has no power to prevent Mintz from complying with the Court's order, and Mintz has no intention of refusing to comply with the order and being held in contempt. Accordingly, the First Circuit will have jurisdiction of this appeal under *Perlman*.[2]

## II.     THIS CASE AMPLY MEETS THE STANDARD FOR A STAY PENDING APPEAL.

The First Circuit has identified four factors which govern the appropriateness of a stay pending appeal: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether issuance of relief will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010), and has identified the first two factors as "the most critical." *Id. See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "Where, as here, the denial of a stay will utterly destroy the status quo, irreparably harming [Legion], but the granting of a stay will cause relatively slight harm to [the government], appellants

---

[2] At the hearing on September 12, 2014, the government appeared to agree that Legion had a right to appeal the Court's order under the *Perlman* doctrine.

4

need not show an absolute probability of success in order to be entitled to a stay." *Providence Journal Co. v. F.B.I.*, 595 F.2d 889, 890 (1st Cir. 1979). This case amply satisfies this standard, and this Court should therefore grant of stay of these proceedings pending appeal.

### A.      Likelihood of Success on the Merits.

This case presents critically important issues regarding the protections of the attorney-client privilege when a company, which the government believes has been noncompliant with the applicable regulations, seeks the assistance of counsel in bringing itself into compliance with an anticipated change in the law. Consultation with counsel under such circumstances lies at the very core of the goals which the privilege is intended to further. "The attorney-client privilege is the most venerable of the safeguards afforded to confidential communications and is enshrined as such in the federal common law." *In re Grand Jury Subpoena (Mr.S)*, 662 F.3d 65, 70 (1st Cir. 2011). It serves "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). *See, e.g., Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, 649 F.3d 5, 30 (1st Cir. 2011)("By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues," *quoting In re Keeper of Records (XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)). The First Circuit has described the attorney-client privilege as "an interest of considerable magnitude," *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 11 (1st Cir. 1998), which is "highly valued." *XYZ Corp.*, 348 F.3d at 23. It is undisputed here that Legion had an attorney-client relationship with its attorneys at Mintz and that, absent application of the crime-fraud exception, the

documents at issue are protected by the attorney-client privilege. While the attorney-client privilege "is not limitless," *XYZ Corp.*, 348 F.3d at 22, "[g]iven that the attorney-client privilege . . . play[s] a critical role in our judicial system, . . . the limited exceptions to them . . . should not be framed so broadly as to vitiate much of the protection they afford." *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999).

This Court's order relative to the crime-fraud exception paints with an impermissibly broad brush, thereby improperly "vitiat[ing] much of the protection" that the attorney-client privilege is intended to afford. The crime-fraud exception applies *only* if "(1). . . the client was engag[ed] in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2). . . the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005), *quoting In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 75 (1st Cir. 1999)(emphasis in original). Critically for present purposes, "it is not enough to find reasonable cause to believe that the client is guilty of crime or fraud." *In re Grand Jury Proceedings*, 417 F.3d at 23. *See, e.g., United States v. Rakes*, 136 F.3d 1, 4 (1st Cir. 1998)("No general rule withdraws the privilege from communications that occur in the same time frame as criminal act conduct"); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986)("The crime/fraud exception to the attorney-client privilege cannot be successfully invoked merely upon a showing that the client communicated with counsel while the client was engaged in criminal activity"). Thus, it is not enough that the grand jury found probable cause to believe that defendant Gorski committed a crime during the relevant time frame. *See* Memorandum and Order at 4-5, citing *Kaley v. United States*, 134 S.Ct. 1090, 1098 (2014).

*Kaley* presented the issue of whether a defendant has a right to a due process probable cause

hearing before property needed to retain counsel is restrained pretrial on the theory that it would be subject to forfeiture upon conviction. Property is subject to pretrial restraint if there is probable cause to believe that the defendant committed an offense to which forfeiture provisions apply *and* that the property has the requisite connection to the crime. *Id.* at 1095. While the Supreme Court held that a grand jury indictment conclusively resolves the first part of the inquiry, it noted that courts "have uniformly allowed the defendant to litigate the second issue . . . : whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment," a hearing to which the government agreed that defendants had a constitutional right. *Id.* at 1095 & n.3. The distinction drawn in *Kaley* is directly analogous to the circumstances presented here. The grand jury's probable cause finding resolves, *at most*, the first part of the inquiry – whether the defendant was committing a crime or fraud when the attorney-client communications took place. What it does not, and cannot, resolve is the remainder of the required inquiry – whether the client intended that the lawyer further that ongoing crime or fraud and whether any of the communications at issue were intended to further that crime or fraud.

"Only when communications are intended directly to advance a particular criminal or fraudulent endeavor will their privileged status be forfeited by operation of this exception." *Violette*, 183 F.3d at 77. This issue can be resolved only through document-by-document review of the communications at issue, a review which Legion will respectfully contend that this Court erroneously declined to conduct, adopting instead a blanket approach to the question and finding all communications within the time frame specified in the government's Rule 17(c) subpoena subject to the crime-fraud exception. "Determining whether documents are privileged demands a highly fact-specific analysis – one that most often requires the party seeking to validate a claim of privilege to

do so document by document." *In re Grand Jury Subpoena*, 662 F.3d at 71; *see In re Grand Jury Subpoena*, 662 F.3d 65, 70 (1st Cir. 2011)("the very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged"); *cf. United States v. Billmyer*, 57 F.3d 31, 35 (1st Cir. 1995)(noting that the district court reviewed the documents at issue "virtually line by line, finding some pages or portions to be protected from disclosure and some unprotected").   No less should be required when the government seeks to strip attorney-client communications of the protections of the attorney-client privilege.

Once an attorney-client relationship has been found to exist, whether or not the client's communications with his attorney fall within the attorney-client privilege is subject to communication-by-communication determination. The same is no less true in the crime-fraud context.  For example, in *In re Richard Roe, Inc.*, 68 F.3d 38 (2d Cir. 1995), the Second Circuit, stressing that the crime-fraud exception applies "only when the court determines that the client communication . . . in question was *itself* in furtherance of the crime or fraud," *id.* at 40 (emphasis in original), remanded the case to the district court with instructions to

> determine which, if any, of the documents or communications were in furtherance of a crime or fraud . . . . If production is ordered, the court shall specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered, which of the parties asserting claims of privilege possessed a criminal or fraudulent purpose with respect to those documents or communications . . . .

*Id.* at 41. *See, e.g., Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 566 (8th Cir. 1997)(proponent did not meet burden of showing that any specific document was made in furtherance of fraud but instead only offered general theory that fraud occurred and asserted that any communications made aided that fraud);*Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir.)(purpose of second prong of test for determining applicability of crime-fraud

exception is "to identify communications that should not be privileged because they were used to further a crime or fraud"(internal quotation marks omitted)), *mod. on other grounds* 30 F.3d 1347 (11th Cir.1994); *United States v. Sabbeth*, 34 F.Supp.2d  144, 151 (E.D.N.Y. 1999)("only communications geared to further criminal conduct implicate the exception;" conducting document-by-document review); *United States v. Skeddle*, 989 F.Supp. 890, 898 (S.D.Ohio 1997)(defendants were entitled to "an opportunity to be heard, on a document-by-document basis, with regard to their contention that various documents are not covered by the crime-fraud exception"); *see also In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005)("It is often hard to determine whether the attorney-client relationship has been misused by the client for crime or fraud without seeing the document . . . as to which the privilege is claimed"); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 819 (7th Cir. 2007)(noting that district court conducted document by document review to determine applicability of crime-fraud exception); *In re Federal Grand Jury Proceedings, 89-10 (MIA)*, 938 F.2d 1578, 1583 (11th Cir.1991)(Court notes that it is unable to discuss applicability of the crime-fraud exception on a document-by-document basis because documents were submitted to the district court *in camera* but indicates that it has satisfied itself that all of them are entitled to the protection of the privilege); *United States v. Balsiger*, 2013 WL 3490873 at *5 (E.D.Wis. July 10, 2013)(government raised crime-fraud exception document by document); *United States v. Abbell*, 963 F.Supp. 1178, 1184 (S.D.Fla. 1997)(court appointed special master to determine applicability of attorney-client privilege and crime-fraud exception).

The Court's reliance on *Kaley* impermissibly diminished the protections of the attorney-client privilege by effectively eliminating the requirement that there be a demonstrable nexus between the particular communication at issue and furtherance of the alleged crime or fraud. As the cases cited

at page 6, *supra*, indicate, it does not suffice that there may be reason to believe that the client was committing a crime or fraud at the time the communications were made. Instead, *only* those specific communications which were intended by the client to further the alleged crime or fraud may be stripped of the privilege under the crime-fraud exception. Thus, for purposes of determining the applicability of the crime-fraud exception, it does not suffice (even if true, which Legion contends it is not) that "Gorski's intention was the same throughout the process of working with the law firm." Memorandum and Order at 9. That conclusion may be controlling as to the first part of the crime-fraud inquiry, but it is not as to the second.

For similar reasons, the concept of "subject matter waiver," *see id.*, has no place in crime-fraud analysis. Application of subject matter waiver concepts in the crime-fraud context effectively eliminates the second part of the crime-fraud analysis by abrogating the privilege as to all communications which relate in any way to the acts which the government contends are criminal. It does not suffice that the communications at issue may be relevant to proof of a crime or pertain to the general subject matter of criminal conduct or occurred  during the same time frame as the alleged criminal conduct; they must be intended by the client to further the criminal activity. *See, e.g., Richard Roe*, 68 F.3d at 40; *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2014 WL 80563 at *4 (E.D.Pa. January 9, 2014)("Evidence tending only to show that a communication 'relates to' or would provide 'relevant evidence' of fraudulent conduct is insufficient"). Moreover, it is not accurate to speak in terms of a client's having "waived" the attorney-client privilege by communicating with counsel for the purpose of furthering the commission of a crime or fraud. By communicating with counsel for the purpose of furthering a crime or fraud, a client may "forfeit" the privilege, *see United States v. Albertelli*, 687 F.3d 439, 450 (1st Cir. 2012), or permit the government

to "pierce" the privilege, *see, e.g., In re Grand Jury Proceedings*, 417 F.3d at 24; *United States v. Schussel*, 291 Fed. Appx. 336, 346 (1st Cir. 2008); *see also XYZ Corp.*, 348 F.3d at 21 ("the government claimed that the crime-fraud exception . . . abrogated any protections that had not been waived"); *United States v. Reeder*, 170 F.3d 93, 107 (1st Cir. 1999)("[b]ecause we hold that the conversation was admissible under the crime-fraud exception, there is no need to reach the waiver issue"), but he does not waive it as he would, for example, by voluntarily disclosing privileged materials to a third party.[3]

A fundamental purpose underlying the attorney-client privilege is to permit clients to consult with counsel and convey information to counsel freely for the purposes of conforming their conduct to the requirements of the law. This salutary purpose would be largely defeated if the client cannot provide counsel with information regarding its past or even ongoing conduct which may reveal the commission of a crime or fraud without fear of disclosure to the government or other third parties. *See Richard Roe*, 68 F.3d at 40 (crime-fraud exception cannot be applied "simply because privileged communications would provide an adversary with evidence of a crime or fraud," as "the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability"). The documents at issue show a company seeking to ensure that it was in compliance with the applicable regulations so that it would remain eligible to bid on and be awarded SDVOSB contracts. It is undisputed that Legion retained Mintz, a reputable and respected law firm which it had sought out for its experience and expertise in this area, in November, 2009, well before the regulatory change. The client was not shown to have lied to Mintz

---

[3] The language in *In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir. 1982), on which the Court relied pertained to this paradigmatic waiver context, voluntary disclosure of privileged materials to a third party.

or to have concealed material information from Mintz during the course of Mintz's representation. The client also was not shown to have rejected the legal advice given by Mintz attorneys or to have superimposed its own decisions on any submission of information to the SBA. Thereafter, it was Mintz that controlled the timing of its completion of the documents necessary to effectuate the previously agreed-upon transfer of Steen's interest to Ianuzzi, it was Mintz attorneys who prepared the documents showing the transfer effective as of February 1, 2010, it was Mintz attorneys who prepared the affidavit in which Ianuzzi stated that the transfer had taken place on February 1, 2010, and it was Mintz attorneys who prepared the submissions to the SBA in response to a bid protest. There is no proof that defendant Gorski did not make full disclosure of all the salient facts to his Mintz attorneys and no proof that Gorski did not follow the advice of his attorneys. Indeed, the communications at issue show him repeatedly seeking counsel's advice and agreeing to follow that advice. The blanket abrogation of Legion's attorney-client privilege effectuated by this Court's order is inconsistent with both the policies and purposes underlying the attorney-client privilege and with the law governing application of the crime-fraud exception. Legion has, accordingly, demonstrated that the appellate issues are not frivolous, that the appeal is not being taken for purposes of delay, and that there is a sufficient likelihood of success on the merits to justify a stay of this case pending appeal.

**B.      Legion Will Be Irreparably Injured Absent A Stay.**

If a stay is not granted and Legion's attorney-client communications are turned over to the government by Mintz, Legion's interest in the preservation of its attorney-client privilege will be irreparably injured. Once the documents are disclosed to the government, they cannot be undisclosed. *See, e.g., In re Kellogg Brown & Root*, 756 F.3d 754, 761 (D.C.Cir. 2014)("post-release review of

a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents"). The cat, as they say, would be out of the bag, *see Gill*, 399 F.3d at 398, with no possibility of remedy. The value of Legion's appellate rights would be extinguished absent a stay.

###### C.    A Stay Will Not "Substantially Injure" the Government.

While a stay would result in the continuance of the trial scheduled for October 6, 2014, no interests of the government would be "substantially injured" by such a continuance. An important factor to consider in this context is the fact that Magistrate Judge Boal issued her opinion finding the crime-fraud exception inapplicable on January 2, 2014. The government, by its own admission, made a conscious decision not to seek review by this Court of that order within the 14 days allowed by statute but changed its mind five months later and moved for reconsideration of Magistrate Judge Boal's opinion on June 13, 2014, just three months before the then-scheduled trial date. Had the government sought review in timely fashion, this issue would likely have been well on its way to resolution by the First Circuit, if not already decided by it, at this juncture. In addition, the government would potentially benefit from the requested stay, as, if Legion's position is sustained on appeal, it would avoid the complications ensuing from its having wrongfully obtained and reviewed privileged materials and perhaps having introduced them at Gorski's trial. Moreover, the government, which obtained a grand jury indictment without these documents, could opt to proceed to trial without the documents.

###### D.    The Public Interest.

To the extent that the public has an interest in this matter, it would favor the granting of a stay until the question of Legion's retention of its attorney-client privilege is decided by the First

Circuit. These are important issues which should be resolved prior to the disclosure of the documents to the government. Certainly the public has no interest of sufficient magnitude to countervail Legion's interest in litigating the issue of the continued viability of its attorney-client privilege before that privilege is irrevocably destroyed.

## CONCLUSION

For all the foregoing reasons, this Court should grant the requested stay pending appeal.

Respectfully submitted,
By its attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
Tel. (617) 227-3700
Fax  (617) 338-9538
owlmgw@att.net

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on 15th day of September, 2014, a copy of the foregoing document has been served via this court's ECF system on all parties of record.

**/s/ Martin G. Weinberg**
Martin G. Weinberg